1838.

LANE
v.
MORREL.

---

## LANE, executor, &c. v. MORREL and others.

M. held lots in Brooklyn; and C. had several adjoining. The corporation, through commissioners, made an assessment; and, without discriminating charged C. as if he were the owner, as well of his own lots as of those that belonged to M. The latter, then, mortgaged his property. Afterwards C., on explanation with the corporation, pays them such proportion of the assessment as seemed to apply to his premises; and the corporation then, claimed a lien, prior to the mortgage on M.'s lots, for the balance. *Held*, that the corporation (on the ground of not having proceeded regularly under statute to ascertain and assess the true respective owners) had no lien on M.'s lots.

---

THIS case came before the court on a bill of foreclosure, embracing lots in the city of Brooklyn; but the only question was, on the effect of an assessment which was pending at the date of the mortgage. It was made in relation to the widening of Myrtle street; and the mortgaged premises were within the range of the assessment; but the commissioners had not discriminated between the lots of the defendant Abraham Morrel the mortgagor and the adjoining premises belonging to James B. Clarke, but assessed both properties in the name of Mr. Clark and charged him only. Morrel's name did not appear at all.

*March* 1,
1838.

*Assessments.*
*Lien.*

The Statute, (Laws of 1833, page 499, ch. 319,) required that the names of all persons interested in the premises should be stated in the report and assessment; and the commissioners to make it were to enter upon and examine the premises and hear the proofs and allegations of the parties interested.

· James B. Clarke afterwards paid a proportional part of the assessment; and it was alleged that the defendant, Abraham

VOL. III.—24

Morrel, promised to pay the balance. Still, the question was as to any lien for it upon the lots themselves ?

Mr. *J. Dikeman* on the part of the complainant, made the following points :

1. The report and assessment mentioned in the answer of the defendants, the mayor, &c., of Brooklyn, in order to constitute it a lien, must be made in all things in strict conformity to the statute laws of 1833, page 499, ch. 319.

2. The act requires that the names of all the persons interested in the premises should be stated in the report and assessment : sec. 2 ; but neither the name of the complainant nor of Morrel is stated in said report.

3. The fixing of the district of assessment mentioned in sec. 7, was to prevent remonstrances by persons who could not, by possibility, be assessed ; and does not require that all the property within such district shall be assessed.

4. The publication of the notices required by sec. 7 is intended to give to the parties named in the report an opportunity of showing cause against it. And a person, owning property within the assessment district, whose name is not stated in the said report, has no reasonable opportunity to object to the same ; and if on examination he does not find his name there he must, of course, infer that his property is not assessed.

5. The subsequent promise of Morrel could not vary the assessment, so as to make it a lien ; and if the mayor, &c. have acquired any rights against him on such promise, they must enforce such rights against him personally.

6. If the said assessment is a lien on the premises it can only be so for the amount of the actual benefit to the premises ; and neither James B. Clarke nor the defendant Morrel can apportion the assessment and determine what part shall stand against the mortgaged premises so as to affect the complainant ; and, therefore, in case any part of the assessment can have priority of the complainants' mortgage, there should be a reference to ascertain the amount of real benefit to the mortgaged premises.

Mr. *Furman,* for the defendant Abraham Morrel.

1. The proceedings, in laying this assessment, must be made

in all things in strict conformity with the statute laws of 1833, ch. 319, p. 499.

2. The apportionment of Mr. Clarke is not binding on the defendant Morrel; and the assessment, having been made in the name of James B. Clarke, it is his debt and cannot be made binding on the defendant Morrel by the promise alleged in the answer of the mayor, &c. (even if the same were made.) The same was not in writing and there was no consideration for the promise, and the same is, therefore, void under the statute; and the defendant Morrel denies that the promise set up was even given.

3. The said assessment is illegal as against the defendant Morrel; and, therefore, void and cannot be collected or land sold.

4. The district laid out by the mayor, &c., for the purpose of laying the assessment, merely defines the extent of the lands within which the assessment shall be made and beyond which the same shall not extend; but does not thereby declare that all the lands within that district shall be assessed.

5. The apportioning of taxes laid by the county does not apply to the assessments. If it had been so intended it would have been so enacted.

Mr. *Lott*, for the corporation of the city of Brooklyn.

1. The proceedings to open and widen Myrtle street were regular.

2. The assessment on the premises in question was a lawful and valid lien.

3. The corporation were authorized to receive from Mr. Clarke (the owner of a part of the ground assessed together with the premises in question) his proportion of the assessment.

4. The assent of Morrel to the apportionment and his promise to pay the balance is good and valid; and the corporation are authorized to sell his ground assessed to satisfy the balance of the assessment due.

5. The mortgage having been given during the pendency of the proceedings the mortgagee is bound by them and stands in the same situation as the mortgagor.

6. The assessment is a prior lien to the complainant's mortgage.

THE VICE-CHANCELLOR :—This case does not present the question of apportionment and contribution, as between the defendant Morrel and James B. Clarke, against whom the assessment was made, as owner of the whole plot of ground, including the lots of Morrel, mortgaged to the complainant ; and therefore what was decided in *Williams* v. *Craig,* 2 Edw. Ch. R. 297, does not apply here.   But it is a question of lien as between the complainant, as mortgagee, and the corporation of Brooklyn, whether the latter has a lien on the mortgaged premises for any portion of the assessment, and, if so, of what portion ;  and, if a lien, whether it has priority of the mortgage ?

In making the assessment, as regards the premises in question, the directions of the statute have not been complied with. There must have been gross negligence on the part of the commissioners in the performance of their duty, in not ascertaining that Morrel was the owner of the two lots in question, and specifying the amount which those two lots were to bear. Morrel was actually occupying the dwelling house on these lots, or on one of them, and the title-deed which showed that the property stood in his own name was on record ; and yet the commissioners comprized these lots in a plot or larger parcel of land, as belonging to James B. Clarke, and assessed the sum of one thousand five hundred and sixty-one dollars and fifty-eight cents to Mr. Clarke.   They could not have fallen into this error if they had made the least inquiry concerning the ownership or " had entered upon and examined the premises," and " had heard the proofs and allegations of the parties interested, &c.," preparatory to the making of their report as mentioned in the statute.   The statute also requires that the commissioners, in their report, should not only specify the premises benefited by the improvement, but likewise the names of the persons interested in the premises, what are their respective interests, and the assessment of benefit which will be derived by them respectively from such improvement, and the proportion of the expense of the improvement which each ought to bear ;  and in making such a report and the necessary investigations connected with it, the commissioners may call to their assistance the attorney and counsel of the corporation : Act of April 30, 1833, sec. 2.

As to Morrel's interest and ownership in lands benefited by

1838.

LANE
v.
MORREL.

the improvement, it has been overlooked. His name is not mentioned in the report; and the proportion of the expense of the improvement which he or his lots ought to bear has not been assessed or passed upon by those who alone were legally competent to decide it. I am inclined to think that this defect in the report and this want of adjudication render the report and the assessment a nullity as respects Morrel and his lots; for how could the corporation proceed to enforce payment of the assessment against him? The eleventh section of the act prescribes the manner of proceeding by warrant after the expiration of sixty days from the confirmation of the report; but for what sum or amount could such a warrant be issued against Morrel? Who has ascertained the amount he is to pay? Nobody. Who is legally authorized to fix the amount after the report is confirmed? Nobody. The common council of Brooklyn have not the power. The law vested the power in commissioners, and they omitted to specify the sum to be paid; and, without a sum certain to be levied, and that sum legally ascertained, no warrant, as it appears to me, could issue. Besides, this proceeding by warrant is a proceeding *in personam* and can be had only against the person made liable by the report to pay the assessment. That person was Mr. Clarke, and his liability extended to the whole sum, one thousand five hundred and sixty-one dollars and fifty-eight cents. In case Mr. Clarke had been compelled to pay the whole the question would have arisen between him and Morrel what remedy the former would have against the latter for contribution and reimbursement, but that is not the question now. Mr. Clarke has not been compelled to pay the whole assessment. He has been let off by paying a proportional part; and the question now is between the corporation of Brooklyn and Morrel and his mortgagee whether the former have a lien on the lands for the portion left unpaid, that portion not having been adjusted or fixed upon, as already observed, by any legal or competent authority. There can be no lien without a remedy either at law or in equity to enforce it. It appears to me there is an insuperable difficulty in the way of enforcing a lien for this unpaid portion of assessment, by any legal measures which the corporation of Brooklyn can resort to against the land. Their authority is conferred by the forty-second section of the act of April 8,

1834, by which Brooklyn is incorporated as a city. This sec ion provides that, after the return of the warrant issued for the collection of assessments, the collector certifying under oath that he has been unable to find sufficient goods and chattels whereon to levy to satisfy the amount of the assessment, the common council may advertise twelve weeks for the owner to pay ; and, in default of payment, they may proceed to sell the premises for a term of years, and in this way obtain payment of the assessment out of the property. But it is obvious that this advertisement and sale must be preceded by the issuing and return of a warrant, as authorized by the previous act of 1833 ; and the issuing of such a warrant, as already shown, must be preceded by such a discriminating and particular assessment and report, as that act contemplates. Has a court of equity, then, the power to establish and enforce a lien for the unpaid portion of the assessment ? The same difficulty exists here as at law, *i. e.* the want of an adjudication by the proper authority of the amount which these lots ought to bear. This court has not the power to make this adjudication. It belonged to the commissioners, and was a matter of judgment, which they were to exercise. They doubtless intended to assess these lots ; but how much or what proportion of the expense of the improvement these lots should bear they, and they only, were competent to decide. Had they determined erroneously, the owner would have had a right of appeal to the supreme court. Should this court now undertake to make an equitable apportionment, as between Morrel and Clarke, the party, if dissatisfied, cannot have the benefit of such appeal. It is manifest, therefore, that this court has not jurisdiction on this point, and that the common council of Brooklyn are not now before the proper tribunal to make the apportionment and assessment of the amount which the property in question ought to bear. If, as the defendants, the common council of Brooklyn, allege in their answer, the defendant Morrel has repeatedly promised them to pay the proportion of the one thousand five hundred and sixty-one dollars left unpaid by Mr. Clarke, and such promise is binding in law, then they have their remedy in an action against him ; but such a promise, even if valid in law, would not of itself create a lien in their favor upon the lands. So, likewise, there may perhaps be a remedy in their behalf

against the commissioners personally for negligence in the performance of their duty, by which they are damnified, provided payment of the portion of the assessment cannot other-. wise be obtained.

I must decree against the claim set up by the defendants, the common council of Brooklyn. There must be a reference to compute the amount due on the complainant's mortgage, and, upon the coming in, &c., of the master's report, a sale of the premises, &c.